IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNICIPAL REVENUE SERVICE, INC. and CHARLES L. HERRON, <br><br> Plaintiffs <br><br> v. <br><br> HOUSTON CASUALTY COMPANY, a foreign corporation, <br><br> Defendant | Docket No. 13-151 Erie <br><br> ELECTRONICALLY FILED PLEADING <br><br> **COMPLAINT** <br><br> Filed on behalf of: Plaintiffs, <br> Municipal Revenue Service, Inc. and <br> Charles L. Herron <br><br> Counsel of Record for Plaintiffs: <br><br> Richard A. Lanzillo, Esq. <br> PA ID No. 53811 <br> Knox McLaughlin Gornall & Sennett, P.C. <br> 120 West Tenth Street <br> Erie, PA 16501 <br> Telephone (814) 459-2800 <br> Facsimile (814) 453-4530 <br> Email rlanzillo@kmgslaw.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNICIPAL REVENUE SERVICE, INC. and CHARLES L. HERRON, | ) Docket No.<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) |
| HOUSTON CASUALTY COMPANY, a foreign corporation, | )<br>)<br>) |
| Defendant | )<br>) |

## **COMPLAINT**

### **Parties**

1. Plaintiff Municipal Revenue Services, Inc. ("MRS") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business 9107 Main Street, McKean, Pennsylvania.

2. Plaintiff Charles L. Herron is an adult individual and citizen of the Commonwealth of Pennsylvania and maintains his residence at 5511 Blenner Road, McKean, Pennsylvania.

3. Defendant, Houston Casualty Company ("HCC"), is believed to be a foreign insurance company, and provides insurance products, including errors and omissions insurance, on a regular and consistent basis within the Commonwealth of Pennsylvania, including within this judicial district. HCC is believed to maintain its administrative offices at 13403 Northwest Freeway, Houston, Texas 77040.

## Jurisdiction and Venue

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that complete diversity of citizenship exists between Plaintiffs and HCC, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue in this judicial district is proper under 28 U.S.C. §1391 because (1) the subject insurance policy was delivered to Plaintiffs within this judicial district; and (2) a material part of the transactions and occurrences upon which this case is based and wrongful conduct of HCC alleged herein took place within this judicial district.

## Material Facts

**A.  The Policy**

6. On or about July 11, 2011, HCC issued Professional Liability Errors & Omissions Insurance Policy No. H711-13397 (the "Policy") to MRS and Charles Herron. A true and correct copy of the Policy and its endorsements is attached as Exhibit A hereto and incorporated herein by reference.

7. The Policy expressly identified MRS and Charles Herron as named insureds and provided a coverage limit in the amount of one million dollars ($1,000,000.00) per claim and in the aggregate subject to a two thousand five hundred dollar ($2,500.00) deductible.

8. The Policy was in effect from July 1, 2011 through July 1, 2012 with a retroactive date of July 1, 2011.

9. The Policy was a "Claims Made and Reported" policy with coverage described as follows:

> [HCC] shall pay on behalf of the Insured any Loss and Claim Expenses, in excess of the Deductible subject to the Policy's Limit of Liability, as the Insured shall become legally obligated to pay as a result of a Claim(s) made against the Insured for a Wrongful Act(s) arising from Professional Services as set forth by Endorsement to this Policy, provided always that: (1) the Claim is first made against the Insured and reported to [HCC], in writing, during the Policy Period or Extended Reporting Period (if applicable); (2) the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy; and (3) such Wrongful Act takes place on or after the Retroactive Date set forth in the Declarations Page of this Policy and prior to the end of the Policy Period.

10. The term "Wrongful Act" as used in the Policy was defined as follows:

> "Wrongful Act" shall mean any actual or alleged negligent act, error or omission or breach of duty committed or alleged to have been committed, or for failure to render, such Professional services as are customarily rendered in the profession of the Insured as set forth by Endorsement to this Policy.

11. The "Named Insured's Professional Services Endorsement" of the Policy designated Plaintiffs' profession as "Tax preparation and/or Bookkeeping Service and/or providing Tax Lien Services, for others for a fee."

12. The term "Claim" as used in the Policy was defined as follows:

> "Claim" shall mean a written demand received by an Insured, including the service of suit or institution of arbitration proceeding against an Insured, for compensation of monetary damages for a Wrongful Act allegedly or actually committed by an Insured.

13. The term "Claim Expenses" as used in the Policy was defined as follows:

> "Claim Expenses" shall mean: (1) reasonable and necessary fees charged by an attorney designed by [HCC]; and (2) all other fees, costs or expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by [HCC], or an attorney designated by [HCC], or by the Insured with the written consent of [HCC]. However, Claim Expenses shall not include salary charges

3

of regular employees or officers of [HCC] nor salary or wages of the Insured, nor any fees, costs, or expenses incurred with respect to any criminal proceedings or actions against the Insured.

14. Regarding HCC's duty to defend covered claims, the Policy provided as follows:

[HCC] shall have the right and duty to defend any covered Claim(s) brought against the Insured alleging a Wrongful Act(s). [HCC] has the sole right to select and appoint legal counsel to represent the Insured as respects any covered Claim to which this Policy applies, except as set forth in Section VII (e) of this Policy. [HCC's] duty to defend any Claim(s) shall cease upon exhaustion of the applicable Limit of Liability.

[HCC] has no duty to defend any Claims not covered by this Policy.

15. At all times relevant to this action, Plaintiffs had paid all policy premiums and satisfied all duties owed to HCC during the Policy period.

**B. The Underlying Litigation**

16. On February 8, 2012, Elliott, Greenleaf & Siedzikowski P.C. ("EGS") commenced a civil action against Charles Herron and Pamela Herron (collectively "Herron") and two other defendants in the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:12-cv-00674. A true and correct copy of EGS's Complaint is attached as Exhibit B hereto and incorporated herein by reference.

17. EGS's Complaint asserted claims against Herron for compensatory and punitive damages and attorneys' fees for: (1) violation of the Pennsylvania Trade Secrets Act with respect to conduct allegedly undertaken regarding the tax lien services performed by MRS; (2) conversion of computer data used for the tax lien services performed by MRS; (3) compensatory and punitive damages for tortious interference based upon conduct allegedly

4

undertaken regarding the tax lien services performed by MRS; and (4) compensatory and punitive damages for conspiracy and aiding and abetting.

18. EGS's Complaint identified Charles Herron and Pamela Herron as officers and agents of MRS during the events alleged in the Complaint and identified the business of MRS and Herron as tax lien services.

19. EGS's Complaint alleged that Herron "facilitate[d] the sale of tax liens to public entities, such as redevelopment authorities, who then monetize[d] them for the public taxing entities that own these tax liens, such as school districts, counties and municipalities." (Complaint ¶17).

20. EGS's Complaint further alleged that the defendants, including Herron, knew "that EGS represents certain purchasers of tax liens, who are public entities, in transactions facilitated by MRS, and that EGS worked substantial hours throughout the year to prepare for tax lien sales closings." (Complaint ¶36).

21. EGS's Complaint further alleged that the defendants, including Herron, participated in a scheme "timed to coincide with the lucrative annual February-April 2012 cycle of delinquent tax lien sales, and renewals, by Pennsylvania public taxing entities." (Complaint ¶38).

22. EGS's Complaint further alleged that Herron conducted the tax lien services business of MRS in a manner that interfered with the business and interests of EGS. (Complaint ¶¶39-43).

5

23. The allegations of EGS's Complaint included the following:

> Beginning in at least as early as the fall of 2011, Defendants Balaban, Herron, and Coble and Mason contacted taxing entities that were scheduled to sell their tax liens in 2012, and without disclosing their true underlying motives, advised them that these taxing entities needed to pass new resolutions, *allowing the 2012 sale of their liens to proceed* utilizing purchasers other than those already approved by the taxing entities and represented by EGS. (Complaint ¶39 (emphasis supplied).

24. EGS's Complaint further alleged that Herron received confidential information and trade secrets taken by a former EGS employee and used the confidential information and trade secrets in MRS's performance of tax lien services. (Complaint ¶¶67-68, 75, 77).

25. EGS's Complaint further alleged that Herron was "presently interfering with EGS's prospective contractual relationships with EGS clients who are purchasers of tax liens, including through advising these clients that the tax lien transaction should now be handled by Defendant S&L." (Complaint ¶179.

**C.    HCC's Wrongful Denial of a Defense and Indemnity for the Initial Complaint**

26. Upon receipt of EGS's Complaint, Herron and MRS promptly notified HCC of the claim in accordance with the terms of the Policy.

27. HCC denied any obligation to tender a defense or provide coverage to Herron despite the fact that EGS's Complaint asserted a "claim" based upon "wrongful acts" allegedly committed by Herron in the tax lien services profession.

D. **EGS's Amended Complaint and HCC's Wrongful Denial of a Defense and Indemnity**

28. On March 8, 2012, EGS filed an Amended Complaint against Herron and the other defendants in the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:12-cv-00674. A true and correct copy of the Amended Complaint is attached hereto as Exhibit C and incorporated herein by reference.

29. EGS's Amended Complaint asserted the same covered "claims" as the initial Complaint and included additional allegations falling within the scope of HCC's duty to defend and indemnify Herron.

30. Upon receipt of EGS's Amended Complaint, Herron and MRS promptly notified HCC of the claim in accordance with the terms of the Policy.

31. HCC denied any obligation to tender a defense or provide coverage to Herron despite the fact that EGS's Amended Complaint asserted a "claim" based upon "wrongful acts" allegedly committed by Herron in the tax lien services profession.

32. On June 29, 2012, EGS filed a Motion for Leave to File a Second Amended Complaint, which Motion, among other amendments, sought to add MRS as a defendant in the action at Docket No. 2:12-cv-00674.

E. **Herron's Defense and Settlement Expenses**

33. As a direct and proximate result of HCC's failure to provide a defense to the claims asserted by EGS in the action at Docket No. 2:12-cv-00674, Herron and MRS were forced to hire counsel and incur substantial attorney fees and related claim expenses that were properly within the scope of the obligations of HCC under the Policy.

34. As a direct and proximate result of HCC's failure to indemnify Herron and MRS for the claims asserted by EGS the action at Docket No. 2:12-cv-00674, Herron and MRS incurred substantial settlement costs and expenses that were properly within the scope of the obligations of HCC under the Policy.

## COUNT I

### (Breach of Insurance Contract)

35. Plaintiffs incorporate by reference each and every allegation of Paragraphs 1 through 34 of this Complaint as though set forth in their entirety.

36. HCC has repudiated and thereby breached its contractual obligations under the Policy to pay "claim expenses" for the defense of Herron and MRS in the action commenced by EGS in the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:12-cv-00674.

37. HCC has repudiated and thereby breached its contractual obligations under the Policy to pay indemnify Herron MRS for the claims asserted by EGS in the action commenced in the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:12-cv-00674.

38. As a direct and proximate result of HCC's failure to provide Herron and MRS with a defense to the claims asserted by EGS in the Complaint and the Amended Complaint, Herron and MRS were forced to hire counsel and incur substantial attorney fees and related claim expenses that were properly within the scope of the obligations of HCC under the Policy.

39. As a direct and proximate result of HCC's failure to indemnify Herron and MRS for the claims asserted by EGS in the Complaint and the Amended Complaint, Herron and MRS incurred substantial settlement costs and expenses that were properly within the scope of the obligations of HCC under the Policy.

WHEREFORE, Plaintiffs demand judgment against Defendant, Houston Casualty Company, for compensatory damages in an amount in excess of $75,000.00, exclusive of interest and costs, plus costs of suit, interest, attorney fees and such other relief as authorized by law.

## COUNT II

### (Bad Faith and Violation of 42 Pa.C.S.A. §8371)

40. Plaintiffs incorporate by reference each and every allegation of Paragraphs 1 through 39 of this Complaint as though set forth in their entirety.

41. HCC has acted in bad faith in its repudiation and breach of its obligations to Plaintiffs under the Policy.

42. HCC's failure to provide a defense to Herron and MRS under the Policy in accordance with its terms constitutes bad faith under applicable law.

43. HCC's failure to indemnify Herron and MRS under the Policy in accordance with its terms constitutes bad faith under applicable law.

44. HCC's failure to investigate the claims against Herron and MRS in accordance with the terms of the Policy constitutes bad faith under applicable law.

45. As a direct and proximate result of HCC's acts of bad faith, Herron and MRS have incurred substantial damages.

46. HCC's bad faith acts and omissions warrant the imposition of punitive damages and such other additional relief as authorized by applicable law.

9

WHEREFORE, Plaintiffs demand judgment against Defendant, Houston Casualty Company, for compensatory damages in an amount in excess of $75,000.00, exclusive of interest and costs, plus costs of suit, interest, attorney fees, punitive damages, and such other relief as authorized by law.

        Respectfully submitted,

        KNOX McLAUGHLIN GORNALL &
        SENNETT, P.C.

By: */s/ Richard A. Lanzillo*
        Richard A. Lanzillo, Esq.
        PA ID #: 53811
        120 West Tenth Street
        Erie, PA 16501-1461
        Telephone: (814) 459-2800
        Fax: (814) 453-4530
        Email: rlanzillo@kmgslaw.com

        Attorneys for Plaintiffs,
        Municipal Revenue Service, Inc. and
        Charles L. Herron

# 1384410.v1