IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNICIPAL REVENUE SERVICE, INC. and CHARLES L. HERRON | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) Civ. No. 1:13-cv-151 Erie<br>) |
| HOUSTON CASUALTY COMPANY, a foreign corporation, | ) Judge Maurice B. Cohill<br>)<br>) |
| Defendant. | )<br>) |

## OPINION

Pending before the Court is Houston Casualty Company's ("HCC") Motion to Dismiss [ECF No. 8] pursuant to Rule 12 of the Federal Rules of Civil Procedure. In its Motion to Dismiss, HCC asserts that it did not breach its insurance contract with Municipal Revenue Service, Inc. and Charles L. Herron (individually "MRS" and "Herron", respectively, and collectively "Plaintiffs"), because the Professional Liability Errors & Omissions Insurance Policy (the "Policy") at issue did not insure against the alleged wrongful acts that were the subject of a lawsuit filed against the Plaintiffs [ECF No. 8 at 2]. HCC asserts the underlying dispute was over business transactions that were not performed in the course of "Professional Services" to clients.

On June 5, 2013, Plaintiffs MRS and its officer and agent Herron, filed a Complaint in Civil Action [ECF No. 1] seeking compensatory and punitive damages, plus costs of suit, interest and attorneys' fees, for wrongful denial of a defense and indemnity for an underlying lawsuit against MRS and Herron. The Complaint alleges Count I, Breach of Insurance Contract,

and Count II, Bad Faith and Violation of 42 Pa.C.S.A. § 8371 [ECF No. 1].

On July 11, 2013, HCC filed its Motion to Dismiss and supporting Brief [ECF Nos. 8 and 9], claiming the acts of the Plaintiffs at issue in the underlying litigation were excluded from coverage under the Insurance Policy. Therefore, the lawsuit should be dismissed because no coverage, no duty to defend, and no indemnity obligation were available to Plaintiffs as a matter of law. As would logically follow, with no duty imposed on HCC by way of the Insurance Policy, any claim of bad faith must fail as a matter of law as well. On August 12, 2013, MRS and Herron filed their Brief in Opposition to HCC's Motion to Dismiss [ECF No. 10] contesting HCC's characterization of the underlying case and alleging that, indeed, there was a duty imposed on HCC, under the contract, to defend and indemnify Plaintiffs. For the reasons set forth below, Defendant's Motion to Dismiss will be denied.

## I. Standard of Review.

In ruling on a Rule 12(b)(6) Motion for Failure to State a Claim upon which Relief can be Granted, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); (see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007)). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). "Factual allegations [of a complaint] must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

The Supreme Court in Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. See 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Phillips, 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 555 n. 3 (2007)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips, "We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." 515 F.3d 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

## II. Relevant Facts.

Municipal Revenue Service, Inc. and Charles L. Herron, as well as William R. Balaban, Pamela Herron, and the law firm of Stevens & Lee were defendants ("Defendants") in a case filed by Elliott Greenleaf & Siedzikowski, P.C. ("EGS") in the United States District Court for the Eastern District of Pennsylvania in February of 2012 [ECF No. 9 at 1]. EGS sought equitable relief to enjoin Defendants' on-going criminal, civil and fiduciary misconduct, and to protect its, and its clients', confidential, proprietary, and trade secret information. EGS also sought compensatory and punitive damages, attorneys' fees and costs. [See EGS Complaint ECF No. 1, Exhibit B]. The facts of the underlying case were that EGS represented public entities in the purchase of tax liens and worked throughout the year to prepare for tax lien sales closings. Herron and others contacted the taxing entities and advised them of the need to pass new resolutions [ECF No. 9 at 3]. This paved the way for Herron and Balaban to replace the original purchaser with a purchaser controlled by Herron, all as part of an alleged scheme to move business from EGS to Balaban's new firm [ECF No. 9 at 3]. Herron was also accused of having

secretly stolen and transferred the files from EGS to a remote internet location where it could be accessed by Herron without the permission of EGS [ECF No. 9 at 4].

In February of 2012 EGS sued the Defendants alleging a total of six (6) counts. The alleged counts were: Count I – Violations of Computer Fraud and Abuse Act (Defendants Balaban and Herron Defendants); Count II – Violations of 18 Pa.C.S. 5741 (Wiretap Act)(All Defendants); Count III – Violation of Pennsylvania Trade Secrets Act (All Defendants); Count IV – Conversion (All Defendants); Count VI – Tortious Interference with Present and Prospective Business Relationships (All Defendants); and Count VIII – Civil Conspiracy and Aiding and Abetting (All Defendants). MRS was not named as a Defendant in the EGS Amended Complaint [ECF No. 9 at 5]. MRS was added in a Second Amended Complaint filed by EGS [ECF No. 9 at 5]. This litigation is now concluded [ECF No. 9 at 1].

MRS and Herron promptly notified HCC of the EGS lawsuit [ECF No. 10 at 5]. MRS and Herron requested that HCC defend and indemnify them in accordance with the terms of a Professional Liability Errors & Omissions Insurance Policy [ECF No. 10 at 5]. HCC is the insurer of the Policy and the insured is "Chuck Herron CPA and Municipal Revenue Services, Inc." [ECF No. 9 at 6]. The Policy period was from July 1, 2011 through July 1, 2012 [ECF No. 10 at 5].

Section I of the Policy sets forth the Insuring Agreement as follows:

The Company shall pay on behalf of the insured any Loss and Claim Expenses, in excess of the Deductible subject to the Policy's Limit of Liability, as the Insured shall become legally obligated to pay as a result of a Claim(s) made against the Insured for a Wrongful Act(s) arising from Professional Services as set forth by Endorsement to this Policy . . . ." [ECF No. 1, Exhibit A, Pol. Sec. I, pg. 1].

The definition of "Wrongful Act" according to the Policy is as follows:

5

"Wrongful Act" shall mean any actual or alleged negligent act, error or omission or breach of duty committed or alleged to have been committed, or for failure to render, such Professional Services as are customarily rendered in the profession of the Insured as set forth by Endorsement to this Policy. [ECF No. 1, Exhibit A, Pol. Sec. III, pg. 4].

"Professional Services" is further explained in the Named Insured's Professional Services Endorsement (Endorsement 1), which states as follows:

In consideration of the premium charged, it is understood and agreed that the Declarations Page of this Policy referenced the "Named Insured's Profession," shall read as follows:

Names Insured's Profession:
Solely in the performance of providing a Tax preparation and/or Bookkeeping Service and/or providing Tax Lien Services, for others for a fee [ECF No. 1, Exhibit A, Policy Endorsement 1].

Finally, the Policy contained certain exclusions in Section V, including the following:

This Policy does not apply to any Claim, Claim Expense or Loss:
r) based upon or arising out of the misuse or unauthorized use or disclosure of confidential, proprietary or personally identifiable information, including medical or financial information, or the actual or alleged failure to inform customers of any security breach that may impact their personal information;

Section II of the Policy sets forth the defense obligation as follows:

The Company shall have the right and duty to defend any covered Claim(s) brought against an Insured alleging a Wrongful Act(s) . . .
The Company has no duty to defend any Claim(s) not covered by this Policy [ECF No. 1, Exhibit A, Policy Sec. II.a].

HCC denied coverage and refused to provide MRS or Herron with either a defense or indemnifications [ECF No. 10 at 5]. As a consequence of HCC's denial of coverage, MRS and Herron were forced to retain counsel to defend them in the EGS litigation and they incurred significant legal fees and settlement costs [ECF No. 10 at 5].

### III. Legal Analysis.

HCC is seeking dismissal of this case which hinges on the issue of whether HCC had a

duty to defend and indemnify MRS and Herron under the terms of the Policy. In Pennsylvania, to recover under an insurance policy, the insured has the burden to show a claim falls "within the coverage provided by the policy." Miller v. Boston Ins. Co., 420 Pa. 566, 570; 218 A.2d 275, 277 (1966).

The general rule in Pennsylvania regarding the insurer's duty to defend and indemnify is as follows:

> Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage. The duty to defend is a distinct obligation, different from and broader than the duty to indemnify . . . If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend.

See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225-26 (3d Cir. 2005).

Based on the Pennsylvania law we must take a close look at the terms of the HCC Insurance Policy to determine whether its coverage would include a situation such as the one that led to the underlying litigation against MRS and Herron. The crux of the issue is whether "Professional Services," as specified in the HCC Insurance Policy cover the acts giving rise to the underlying litigation.

HCC points out the explicit language in the policy that covers "Wrongful Acts." This language states that the Policy provides coverage if the beneficiary of the Policy fails "to render, such *Professional Services as are customarily rendered in the profession of the insured.*" [ECF No. 9 at 6] (emphasis added). Professional Services are specifically defined in the HCC Policy Endorsement and HCC asserts that nowhere in the EGS Complaint, which contains the numerous counts listed above, does EGS make a claim that there was an act, error or omission in relation to tax preparation, bookkeeping or providing tax lien services [ECF No. 9 at 4]. This language is

taken directly from the HCC Policy section which specifically defines the "Professional Services" of the beneficiary of the policy. Finally, HCC quotes the Policy stating, "The Company has no duty to defend any Claim(s) not covered by this Policy." [ECF No. 9 at 7].

HCC asserts there was no professional relationship between EGS and Plaintiffs at the time of the wrongful acts [ECF No. 9 at 10]. Plaintiffs were not performing any Professional Services for the Elliott Firm. In fact, the relationship was such that EGS was performing legal services for the Plaintiffs. Upon Balaban's departure, a business dispute occurred over client files and client retention [ECF No. 9 at 10]. HCC characterizes this as a business function and not Professional Services. Furthermore, EGS's Complaint alleges that Herron and others contacted taxing entities about enacting new resolutions to direct business opportunities away from EGS. There was no professional negligence asserted and there were no errors or misconduct with respect to providing Professional Services to Plaintiffs' clients [ECF No. 9 at 11-12]. HCC asserts that any actions that occurred to cause the underlying litigation were business transactions and not Professional Services and therefore, fall out of the purview of coverage of the Policy.

A secondary argument put forth by HCC is that Exclusion "r" of the Policy excludes any coverage that might apply to the Plaintiffs underlying litigation [ECF No. 9 at 13]. As stated above, Exclusion "r" states that the Policy does not apply to any "Claim, Claim Expense or Loss: r) based upon or arising out of the misuse or unauthorized use or disclosure of confidential, proprietary or personally identifiable information . . . " [ECF No. 9 at 13]. HCC asserts because the underlying litigation was "based upon or arising out of the misuse or unauthorized use or disclosure of confidential and proprietary information," the lawsuit should be dismissed because

8

no coverage, no duty to defend, and no indemnity obligation was available to Plaintiffs as a matter of law [ECF No. 9 at 14]. Finally, as would logically follow, HCC asserts there can be no bad faith claim where no duty arose [ECF No. 9 at 14].

Plaintiffs agree that the language of the Policy is the controlling factor in the determination of this case. However, from Plaintiffs perspective the language of the Policy can be interpreted in a different way than what HCC proposes. "When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured." State Auto. Ins. Ass'n. v. Kuhfahl, 364 Pa. Super. 230, 238 (1987). Under Pennsylvania Law, the duty to defend is determined solely by the allegations contained within the four corners of the complaint of the underlying case. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 329-330 (2006). "So long as one count or claim is covered under the policy, the duty to defend is triggered. Any doubt or ambiguity as to the pleadings or the policy terms should be resolved in favor of the insured." Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co., 623 F.3d 135, 139-140 (3d. Cir. 2010). Plaintiffs add to their argument by asserting that ultimately, it is the facts alleged in the underlying complaint, not the cause of action pled, that will determine if there is coverage. See Donegal Mut. Ins. Co. v. Baumhammers, 2006 Pa. Super 32, 893 A.2d 797, 811 (2006) (affirmed in part and reversed in part on other grounds by Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147 (2007)).

In the case at hand, Plaintiffs assert that the alleged "wrongful acts" arose directly from the MRS professional tax lien services, which are the Professional Services provided by MRS [ECF No. 10 at 8]. More specifically, MRS's tax lien services involve MRS working closely with governmental bodies that hold and desire to sell their tax liens, attorneys who assist in

9

structuring and closing the transactions, and the purchasers of tax liens [ECF No. 10 at 7]. EGS, in its complaint, alleged that MRS conducted these core functions of its profession in a way that diverted EGS clients and misappropriated EGS confidential information [ECF No. 10 at 7]. The functions performed were distinct "professional services" that could only be performed by professionals in the business [ECF No. 10 at 9]. Plaintiff asserts it was the same "Professional Services" described in the Policy for coverage. As such, the alleged acts fell within the scope of coverage of the Policy and triggered HCC's duty to defend the Plaintiffs in the underlying lawsuit. "[I]t is the nature of the act giving rise to liability, not the nature of the claim made, that determines whether a particular act is a professional service." Home Ins. Co. v. Greenfield and Chimicles, Home Ins. Co. v. Greenfield & Chimicles, 97-7797, 1999 WL 286440 *7 (E.D. Pa. May 5, 1999).

In the underlying complaint MRS and Herron were accused of conducting their Professional Services in a manner that shifted tax lien sales to specific purchasers and drafting and arranging for the passage of resolutions to accomplish this transfer, timing the transfers to coincide with the most lucrative period for tax lien sale professionals [ECF No. 10 at 13]. Plaintiffs assert that the acts could only be performed by personal with professional expertise in their specific areas of business.

Plaintiffs' response to HCC's Exclusion r argument is that is does not negate coverage. The Plaintiffs assert that Exclusion r is narrow and only applies to the use or disclosure of confidential, proprietary or personally identifiable information [ECF No. 10 at 14]. While several claims in the underlying complaint dealt with Plaintiffs taking EGS's confidential information, other claims dealt with shifting tax lien work from EGS to another law firm, which

10

had nothing to do with confidential or proprietary information. "[I]f the plaintiffs' complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence [sic], until it could confine the claim to a recovery that the policy did not cover." Pittsburgh Plate Glass Co. v. Fid. & Cas. Co. of N. Y., 281 F.2d 538, 540 (3d Cir. 1960) (quoting Judge Learned Hand in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 752-753 (2nd Cir. 1949)).

Plaintiffs assert that in light of the various claims alleged in the underlying multi-claim action, the Exclusion "r" would not negate Plaintiffs entire claim under the Policy. Finally, based on the Plaintiffs' arguments that they were entitled to coverage under the Policy, it follows that their bad faith allegation stands.

**Analysis**

To reiterate what was stated above, on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A court must accept as true all of the factual allegations contained in a complaint, however, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Based on the testimony provided by both parties, we find that Plaintiffs have stated a claim upon which relief can be granted. Therefore, HCC's Motion to Dismiss is denied.

In particular, Plaintiffs state that there was a valid Professional Liability Errors & Omissions Insurance Policy in place, which was issued by HCC, and covered the period during which Plaintiffs were sued by ECG in a multi-count action alleging among other things, Violation of Pennsylvania Trade Secrets Act and Tortious Interference with Present and Prospective Business Relationships. Plaintiffs allege that HCC illegally refused Policy coverage to defend and indemnify Plaintiffs in the underlying litigation.

Viewing Plaintiffs' claim of Breach of Insurance Contract and Bad Faith Violation of 42 Pa.C.S.A. § 8371 in a light most favorable to them, we find the following factual assertions and reasonable legal inferences to be plausible: That Plaintiffs possessed a valid and enforceable insurance policy, which covered "wrongful acts" committed by the insured; that the Policy covered "wrongful acts" in the course of "Professional Services"; that "Professional Services" may be construed to include those acts (or "wrongful acts") that are committed in the course of business transactions (illegal or not) and include elements or actions that may be conducted in the course of "professional" work, thus, falling in the purview of "Professional Services"; that there were highly specific professional services rendered at the time the "wrongful acts" were committed; and that coverage of the policy is not excluded because Exclusion "r" of the Policy states the Policy will not apply when there is use or disclosure of confidential, proprietary or personally identifiable information in the wrongful act of claimant because other counts in the underlying claim did not include the acts specified in Exclusion "r". These allegations constitute "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct at 1965).

The Pennsylvania law covering the duty of an insurer to an insured is very clear and hinges on the language of the policy at issue. Plaintiff's facts in this case are plausible and the legal conclusion would flow therefrom. A ruling in favor of a Motion to Dismiss is not appropriate where there is a plausible case where Plaintiffs maintain a legitimate cause of action with facts that support that cause of action and there is potential for success in the claim. We, therefore, find that Plaintiffs have adequately pleaded a claim for relief based on the allegations of Breach of Contract and Bad Faith.

**IV. Conclusion.**

Because Plaintiffs have provided sufficient factual matter to state a claim to relief that is plausible on its face, Defendant's Motion to Dismiss will be denied. The case shall proceed in consideration of Plaintiff's claims.

An appropriate Order follows.

March 5, 2014

Maurice B. Cohill, Jr.
Senior District Court Judge